**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **ROBERT JOSEPH,** | |
| **Plaintiff,** | **MEMORANDUM DECISION** |
| | **AND ORDER** |
| **vs.** | |
| **SALT LAKE CITY CORPORATION et al.,** | |
| | **Case No.  2:00CV340** |
| **Defendants.** | |

This matter is before the court on (1) the City Defendants' Motion for Summary Judgment as to the claims asserted by Robert Joseph; (2) the City Defendants' Motion for Summary Judgment as to the claims asserted by Rachelle Joseph; and (3) the City Defendants' Sealed Motion for Sanctions.  A hearing on the Summary Judgment Motions was held on April 20, 2005.  At the hearing, Plaintiffs Robert Joseph ("Mr. Joseph") and Rachelle Joseph ("Mrs. Joseph") were represented by D. Bruce Oliver.  Defendants were represented by Morris O Haggerty.[1]  Before the hearing, the court carefully considered the memoranda and other

---

[1]  The City Defendants are Dee Dee Corradini, Ross Anderson, Ruben B. Ortega, Jerry Mendez, A.M. (Mac) Connole, Salt Lake City, Guy Yoshikawa, Roy Wasden, William Shelton, Larry Stott, Charles (Rick) Dinse, Scott D. Folsom, Judy Denker, Mark Zelig, Mark Scharman, Mark Askerlund, Jason Snow, David Greer, and Zane Swim.  The claims against David Greer, however, were previously dismissed by this court's Order dated August 12, 2004.

materials submitted by the parties.[2]  Since the hearing, the court has further considered the law and the facts relating to these motions and it has also considered the letter to the court dated May 6, 2005 from D. Bruce Oliver and the letter dated May 6, 2005 from Morris O Haggerty.   Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. STANDARD OF REVIEW

A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate when the pleadings, depositions, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The movant bears an initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case.  If the movant carries this initial burden, the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  While the non-movant is entitled to the benefit of whatever reasonable inferences there are in its favor, the reasonableness of those inferences is scrutinized in light of the undisputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  A genuine dispute

---

[2] The court also notes that significant accommodations were made to Plaintiff during the briefing of these motions.  After completion of the briefing on the Motion for Summary Judgment pertaining to Mr. Joseph, Plaintiff sought to re-open and conduct further discovery, although the deadline had long-since passed.  This request was granted.  Plaintiff was also permitted to file an amended opposition memorandum.

exists only if "the evidence is such that a reasonable jury could return a verdict for the
nonmoving party." *Anderson,* 477 U.S. at 248.  "By its very terms, this standard provides that
the mere existence of *some* alleged factual dispute between the parties will not defeat an
otherwise properly supported motion for summary judgment; the requirement is that there is no
*genuine* issue of *material* fact."  *Anderson,* 477 U.S. at 247-48 (emphasis in original).

## II. THE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PERTAINING TO ROBERT JOSEPH'S CLAIMS

The material facts that underlie this action are not disputed.  On March 26, 1999, Mr.
Joseph, an off-duty Salt Lake City Police Officer, pulled over a speeding driver.  The specific
details of the stop, the driver's attempt to flee, and the eleven shots fired by Mr. Joseph at the
motorist are not relevant for purposes of deciding the instant motion.  Mr. Joseph was later
terminated from his employment for unjustified use of deadly force during this incident.  His
termination was later changed to a 20-day suspension, and Mr. Joseph was then reinstated,
subject to a fitness-for-duty exam.  After the fitness-for-duty examination, the psychiatrist
determined that Mr. Joseph was not fit for duty.  Consequently, he was terminated.

A criminal charge was filed against Mr. Joseph based on his conduct.  However, the
prosecutor, Ernest Jones, subsequently made the decision not to pursue the case because there
was conflicting evidence, and Mr. Jones did not think he could prove beyond a reasonable doubt
that Mr. Joseph was unjustified in firing his gun eleven times at the motorist.[3]

Joseph brought two actions concerning these matters through the available Salt Lake City

---

[3] Mr. Joseph repeatedly asserts that the criminal case against him was dismissed because
the court found that he was justified in his use of force.  The court, however, never made such a
finding.

Civil Service administrative process.  He then appealed adverse results in both proceedings to the Utah Court of Appeals, where the court ruled in favor of the City.  Mr. Joseph then sought certiorari in the Utah Supreme Court and the U.S. Supreme Court, both of which declined to hear his claims.

In this action, Mr. Joseph has alleged several claims against the City Defendants.  In his First Cause of Action, he asserts four counts: Count I - Malicious Prosecution;  Counts II and III - Violation of Due Process Arising Out of Suspension/Termination; Count IV - Violation of Due Process - Supervise and Remedy .  In his Second Cause of Action, he asserts a Conspiracy to Deprive and to Obstruct Justice.  In his Third Cause of Action, he asserts a RICO claim.  The City Defendants argue that all of these claims should be dismissed.

**A.  First Cause of Action: Count I - Malicious Prosecution**

The City Defendants argue that Count I should be dismissed against them because the County–not the City–initiated the criminal proceedings.  The only City Defendant involved in filing the Information and testifying at the preliminary hearing was Sergeant Mendez.   The County made the decision to prosecute and later made the decision to terminate Mr. Joseph's employment.  Thus, with the exception of Mendez, no one at the City was involved.  The City further argues that the undisputed facts demonstrate that Mendez had no ability to affect the decision.  In addition, the City Defendants argue that the finding of probable cause broke the chain of causation, and thus, Joseph has failed to state a claim for malicious prosecution.

Mr. Joseph, on the other hand, contends that Mendez was very prejudiced against him based on the fact that when Mendez arrived on the scene, he made a statement to the effect of "this shoot doesn't smell right."  Mr. Joseph repeatedly highlights this statement to demonstrate

4

that Mendez was "out to get him" from the beginning of the incident.

Mr. Joseph's malicious prosecution claim, brought pursuant to 42 U.S.C. § 1983 ("Section 1983") must be dismissed.  There is no evidence that any of the City Defendants–except for Mr. Mendez–were  involved in the prosecution.  Further, regarding Mr. Mendez, there is no evidence that he initiated or procured the prosecution, nor is there any evidence that he provided false testimony or that he ever concealed any evidence.   In light of Plaintiff's lack of evidence and the subsequent finding of probable cause by the state court, Plaintiff's claim must be dismissed.

Moreover, Plaintiff has failed to provide any authority for the proposition that a plaintiff may prevail on a Section 1983 malicious prosecution claim absent incarceration or a trial. While the specific requirements of a Section 1983 malicious prosecution claim remain unclear, the court is unaware of any case in which a Section 1983 malicious prosecution claim succeeded when the facts did not involve incarceration or a trial of the defendant.   Thus, even if Mr. Joseph had marshaled more damaging evidence–which he did not–he could not prevail on a Section 1983 malicious prosecution claim in any event because the charges against him were dismissed prior to trial, and there is no evidence that he was ever incarcerated.

**B.**    **First Cause of Action - Counts II and III - Violation of Due Process Arising Out of Suspension/Termination**

For purposes of this motion, the City Defendants agree that Mr. Joseph had a property interest in his employment that could only be terminated after receiving due process.  Thus, they concede for purposes of this motion that he had a liberty interest that could not be terminated without due process.  The City Defendants argue, however, that the undisputed facts demonstrate

that Mr. Joseph received all the process to which he was entitled (or waived the process that was offered to him) regarding both his 20-day suspension and his eventual termination.

Mr. Joseph was entitled to challenge employment decisions by appealing to the Salt Lake City Civil Service Commission (the "Commission").  Mr. Joseph did so.  *See Joseph v. Salt Lake City Civil Serv. Comm'n et al.*, 2002 UT App 250 (July 26, 2002) (not published) and *Joseph v. Salt Lake City Civil Serv. Comm'n et al.*, 2002 UT App 254, 53 P.3d 11 (Utah Ct. App. 2002). With regard to his appeals to the Commission, Mr. Joseph was afforded the full panoply of due process–a hearing with attorney representation, the right to cross-examine witnesses, the right to call his own witnesses, etc.  With regard to his suspension, he availed himself of these procedures.[4]  However, with regard to his termination, Mr. Joseph chose to not comply with the required procedures of the Commission when he refused to answer discovery, resulting in dismissal of his appeal and a waiver of his due process rights.  Thus, Mr. Joseph either received full due process or waived his rights to it.  Thus, he has no claim for a violation of his due process rights regarding his suspension or his termination.

Additionally, Mr. Joseph's due process claims are barred for a second reason–the claim preclusion branch of res judicata.  First, he challenged the hearing he received regarding his

---

[4]  Mr. Joseph argues that evidence against him was concealed, and thus the hearings were tainted.  However, in *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 520 (10th Cir. 1998), the court found that "[t]he fact that [plaintiff] was unable to discover every piece of evidence is of no consequence as a matter of procedural due process.  The Due Process Clause does not guarantee that parties to an adversarial proceeding may discover every piece of evidence they desire." Further, even assuming that evidence was concealed, which is disputed, there is no indication whatsoever that the allegedly "concealed" evidence would have made any difference in the Commission's determinations.

suspension by taking an appeal to the Utah Court of Appeals.  In that appeal, he raised numerous

perceived procedural defects.  His challenges were denied, and the Commission's decision was

affirmed.  Second, he challenged the ruling of the Commission regarding his termination by

appealing that decision to the Utah Court of Appeals.  He specifically sought a ruling that his due

process rights were violated.  The Utah Court of Appeals found that "the Commission did not

violate Joseph's due process right to a post-deprivation hearing."  Joseph appealed both

decisions to the Utah Supreme Court and to the United States Supreme Court, but neither court

granted certiorari.  Thus, Mr. Joseph is now precluded from further actions asserting due process

violations.  *See*, *e.g.*, *Strickland v. City of Albuquerque*, 130 F.3d 1408 (10th Cir. 1997); *Career

Serv. Review Bd. v. Utah Dep't of Corrections*, 942 P.2d 933, 938 (Utah 1997) .

**C.      First Cause of Action - Counts IV - Violation of Due Process - Supervise and
          Remedy**

          Mr. Joseph's First Cause of Action - Count IV seeks to make certain City Defendants

liable for failure to investigate Mr. Joseph's allegations of corruption and for not adequately

supervising and training employees.  This claim fails because there has been no underlying

constitutional violation by any employee, and thus there can be no violation of a duty to

supervise and train.

**D.      Second Cause of Action - Conspiracy to Deprive and to Obstruct Justice**

          Mr. Joseph has asserted a claim for violations of 42 U.S.C. § 1985(2) and (3) ("Section

1985").  However, he has not created a disputed fact regarding any racial or other class-based

invidious discriminatory animus behind the alleged conspirators' actions.  While he has asserted

that he is Lebanese and that he was discriminated against on this basis, he offers not one shred of

evidence to support such a claim.  Indeed, his other factual assertions belie such a claim.   Thus, his claims pursuant to Section 1985 are dismissed.

**E.  Third Cause of Action - RICO**

Mr. Joseph's Third Cause of Action for a violation of RICO, 18 U.S.C. § 1962,  is dismissed because he has failed to allege that the City Defendants violated RICO, and the undisputed facts demonstrate that no racketeering activity occurred in any event.[5]

### III. THE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PERTAINING TO RACHELLE JOSEPH

**A.  Background**

Rachelle Joseph is the wife of Robert Joseph.  At approximately 1:00 a.m. on March 26, 1999, Rachelle–accompanied by her stepson–met Mr. Joseph at Liberty Park to obtain a key to their house, as their other children had gone to bed and had inadvertently locked Mrs. Joseph out of the house.  While meeting her husband, she observed a car pass by at a high rate of speed. She asked her husband, who was off duty, to stop the car.  Mr. Joseph pursued the speeder, and various events occurred leading him to fire his weapon at the motorist 11 times.  Several minutes later, Ms. Joseph arrived at the scene.  She saw her husband and backed up her car to speak with him.  He told her he had just been in "a police shooting."  She was the first person on the scene. She then left, proceeding to the freeway.  She then saw police cars go by with lights and sirens on, and thus she decided to go back to make sure that he husband was okay.

By that time, the street was cordoned off.  She was met by Officer Poulsen, who was

---

[5]   This decision does not preclude Trace Taylor from seeking civil or criminal remedies regarding the alleged threats made to her during discovery in this action.

directing traffic.  She told him that she was Mr. Joseph's wife.  He asked her to park her car and

then get into his police car so that he could transport her to the shooting scene to talk to her

husband.  Ms. Joseph was upset and crying.  She had seen an ambulance go to the scene, which

scared her.  She wanted to know what was going on with her husband.  Officer Poulsen told her

that he thought that Mr. Joseph was okay.   Mrs. Joseph told Officer Poulsen that she had been

with Rob at the park just prior to the shooting.  She believes that Officer Poulsen said that the

police would take her statement.

The timing of subsequent events is disputed.  After an uncertain amount of time, Officer

Poulsen took her statement.  After sitting in the car for approximately 30-45 minutes, Lt. Zelig

came over to Officer Poulsen and said that Sergeant Mendez wanted to have Mrs. Joseph taken

to the police station to be interviewed.  According to the City Defendants, Mrs. Joseph was

cooperating with the police to convey the factual information she had.  She was willing to wait

around to convey that information.  Officer Poulsen did not recall that Mrs. Joseph stated that

she wanted to leave, and she never actually tried to leave.  Although Mrs. Joseph claims that she

told "everyone" that she wanted to leave, no officer at the scene remembers such a request.

At some point, she saw and spoke to her husband.  The City Defendants claim that Mrs.

Joseph testified in her deposition that she spoke to Mr. Joseph toward the end of the period of

her alleged detention.  They also provide evidence that Mr. Joseph left the scene prior to 2:59

a.m. because he filled out a report at the Salt Lake City Police Headquarters building at that time.

Thus, the City Defendants claim, Mrs. Joseph left prior to 3:00 a.m.  Mrs. Joseph is unsure of

when she arrived home, but believes it was around 5:00 a.m.

At some point, when Sgt. Mendez learned that Mrs. Joseph was not a direct witness to

the shooting, he stated that she could be interviewed at a later date.  Officer Wooldridge then

told Mrs. Joseph that she could be released.  According to the City, "release" was used in the

sense that the police would not be asking her to stay, not in the sense that she had previously

been detained.  Sgt. Mendez had never asked Wooldridge to detain Rachelle, nor did Officer

Wooldridge detain her.  Officer Wooldridge left the scene of the shooting at 2:25.

     Essentially, the City Defendants claim that the officers at the scene merely tried to help

comfort Mrs. Joseph, and they sought to obtain her version of what happened.  They claim that

she arrived on the scene at approximately 1:00 a.m. and that Officer Poulsen then comforted her

and took her to her husband as soon as he was relieved from his duty directing traffic.  Officer

Poulsen knew that the Josephs' other children were home alone, so he called dispatch to arrange

for someone to go stay with the children.[6]  Although the officers sought to discover what Mrs.

Joseph knew, they claim that they quickly determined that she had not witnessed the shooting,

and therefore her information was of limited value.  The City Defendants claim that Mrs. Joseph

wanted to stay until she had verified that her husband was okay, and then she left, sometime

between 2:30 and 3:00.  The City Defendants claim that she never asked to leave.

     Mrs. Joseph, on the other hand, claims that she was unlawfully detained until

approximately 5:00 a.m. (for approximately four hours), even though she kept telling the officers

at the scene that her other kids were home alone and that she did not know anything.  She

contends that even her husband told the officers to let her go and that she repeatedly asked to be

---

     [6]    Officer Poulsen was intentionally not named as a defendant in this action because, according to Mrs. Joseph, he had nothing to do with the alleged detention.  Mrs. Joseph believes that he was only following instructions from someone else to hold her.

let go.  She essentially argues that the officers wanted to punish her for her husband's "bad shoot."

**B.  Discussion**

The City Defendants have moved for summary judgment as to the three claims asserted by Rachelle Joseph.  First, she has asserted a claim for Unlawful Detention/False Arrest/Wrongful Imprisonment.  Second, she has a claim for "Denial of Property–Wrongful Termination," based on her husband's loss of a job.  Finally, she has asserted a RICO claim.  In responding to the motion, Plaintiff did not addressed either the Second or Third claims, which the City understood to be a concession that those claims may be dismissed.

In addition, Mrs. Joseph appears to concede that her First Cause of Action is asserted against only Defendants Zelig and Mendez, and thus the remaining individual defendants and the City are dismissed.

The remaining City Defendants argue that Mrs. Joseph's alleged detention did not rise to the level of a seizure because she was at the shooting scene voluntarily, she was waiting to make sure her husband was okay, and a reasonable person would not feel that they were not free to leave in these circumstances.  Moreover, even if the undisputed facts supported the fact that Mrs. Joseph reasonably perceived that she was being detained, the City Defendants contend that the actions of the officers were reasonable under the circumstances.   Further, there is no clearly established law preventing the brief detention of witnesses to obtain statements.

Although there is a dispute as to the length of time Mrs. Joseph was at the scene of the shooting, and the court is not permitted to make factual determinations in the context of a summary judgment motion, the court nonetheless agrees with the City Defendants that no

11

reasonable jury could conclude that the police conduct in this case would have communicated to a reasonable person that she had been detained.  Moreover, even if the undisputed facts supported the fact that Mrs. Joseph reasonably perceived that she was being detained, the actions of the officers were reasonable under the circumstances.  Mrs. Joseph had indicated that she was the first on the scene, and it was reasonable for the officers to seek to question her.  They understandably had certain duties that they were required to attend to before they could assist Mrs. Joseph in talking with her husband.  There is no indication that the detention was painful, degrading, or unduly prolonged.  There is no evidence that the officers used or threatened to use any force or that they made threatening statements.  There is no evidence that the officers unnecessarily detained her after they learned that she had not seen the actual incident.

In addition, there is no clearly established law regarding the length of time an officer may request that a witness stay for questioning.  Thus, even assuming that Mrs. Joseph was actually detained at the scene of the shooting for over four hours, against her will, the remaining defendants would have qualified immunity for their actions.  Accordingly, her claim for unlawful detention is dismissed.

## IV. THE CITY DEFENDANTS' SEALED MOTION FOR SANCTIONS

In May of 2003, the City Defendants filed a memorandum in opposition to Plaintiff's Motion for Sanctions for Attorney Misconduct.  In their memorandum, the City Defendants set forth more than ten pages of facts related to Plaintiff's vexatious, mean-spirited, baseless, and unreasonable ad hominem attacks against counsel for the City Defendants.  On July 17, 2003, this court issued an Order denying Plaintiff's Motion for Sanctions for Attorney Misconduct and admonishing Plaintiff that the court was:

> . . . deeply troubled by the baseless and scurrilous allegations of criminal and professional misconduct asserted by Plaintiff's counsel against both [of Defendants' attorneys] in the instant motion and by Plaintiff's counsel's routine practice of including in his pleadings ad hominem attacks and/or allegations or criminal or professional misconduct regarding opposing counsel or their clients. Plaintiff and/or his counsel have generally not conducted this litigation with an appropriate level of civility toward opposing counsel and their clients.

In the Order, the court further stated that "this court hereby admonishes Plaintiff and his counsel that further unreasonable and vexatious conduct will not be tolerated" and that "Plaintiff and his counsel are also hereby notified that the failure to put an end to the uncivil nature of this litigation could result in dismissal of the entire action."

In the City Defendants' Sealed Motion for Sanctions, they have provided evidence that Mr. Joseph has continued to make false and extremely negative comments to various Defendants (and others) about one of their attorneys–an attorney who, to the court's knowledge, maintains an impeccable reputation for professionalism, civility, and ethical conduct.  Not only has Mr. Joseph discredited this attorney by telling various people, including various Defendants that their attorney suborned perjury and was "part of the crime," among other things, but he has also contacted these individual Defendants without their counsel being present, and through his statements, has significantly interfered with this individual's ability to defend this case and to maintain the attorney-client relationship.

This court has previous warned Plaintiff and his counsel that such conduct would not be tolerated.  The court hereby dismisses Mr. Joseph's claims not only on the merits, as discussed above, but also as a sanction for his unacceptable conduct even after having been warned about the consequences of such conduct.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that the City Defendants' Motion for Summary Judgment Regarding the Claims of Robert Joseph is GRANTED. The claims asserted by Robert Joseph against the City Defendants are DISMISSED with prejudice. The City Defendants' Motion for Summary Judgment As to the Claims of Rachelle Joseph is GRANTED. The claims asserted by Rachelle Joseph against the City Defendants are DISMISSED with prejudice. Additionally, the City Defendants' Sealed Motion for Sanctions is GRANTED. The claims asserted by Robert Joseph are DISMISSED on this independent basis. Because there are no remaining claims against any Defendants, this action is hereby DISMISSED. Any non-dispositive motions remaining on the docket are MOOT. The trial date and any other remaining dates are hereby VACATED.

DATED this 8th day of July, 2005.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

14